IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ELMER JIMMY MAES,<br><br>　　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  1:08CR31DAK |

This matter is before the court on Defendant Elmer Jimmy Maes's Motion to Suppress Evidence.  The court held an evidentiary hearing on the motion to suppress on October 9, 2008, and closing arguments on December 16, 2008.  At the hearings, Defendant was present and represented by Don Sharp, and Plaintiff was represented by Nathan Lyon.  The court has carefully considered the evidence and testimony presented at the evidentiary hearing, the parties' memoranda, and the law and facts relating to this motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**FINDINGS OF FACT**

On November 18, 2006, at approximately 9:00 p.m., Agents Haney and Johnson with the Weber-Morgan Narcotics Strike Force went to the Defendant's home because they had received complaints that an individual named Elmer or Omar was selling methamphetamine from the home.  While knocking on the front door, the agents heard a woman calling from the side of the

house, asking who was there.  The agents went to the side door under the carport where they met Francine Maes, Defendant's wife.  The agents identified themselves as police officers and showed her their badges.  The agents asked if she lived there and if there was an Elmer or Omar that resided in the home.  She said that an Elmer lived at the home.  At about the same time, Defendant also came to the door and stated that he was Elmer.

The agents again identified themselves as police officers. Agent Johnson was dressed in jeans, a strike force sweatshirt, strike force baseball hat, a traditional police badge hanging around his neck, a firearm on his hip that was covered by his sweatshirt, and a radio in his back pocket.  Agent Haney was dressed in jeans and a t-shirt, with a police badge also hanging around his neck and a firearm on his side that was concealed by his clothing.  The agents asked if the could come in and talk to them.  They said yes, and Defendant held the door open for them so they could enter the home.

The agents were led into the kitchen.  The agents told Defendant that they had received a complaint about drugs and talked to them regarding the nature of the complaints.  Both Defendant and Francine denied any use or involvement in narcotics.  Agent Johnson asked if there were any drugs in the home.  Defendant responded that he only had medications for medical purposes.  The tone of the conversation was friendly and neighborly.

Agent Johnson asked if they could look around.  Defendant said, "come on," and started walking through the home.  Agent Johnson followed Defendant while Agent Haney stayed in the kitchen with Francine.  Defendant first led Agent Johnson into the living room and then back to the master bedroom.  Inside the master bedroom, Agent Johnson saw something under a blanket

and asked Defendant if he would move the blanket off of it.  Under the blanket was a triple beam scale containing the residue of a green leafy substance, which Agent Johnson recognized as marijuana.  While Agent Johnson was examining the scale, Defendant exited the room into the front room and then returned momentarily with an ashtray containing roaches of burnt marijuana.  Defendant indicated, "This is all I've got."

Agent Johnson returned to the kitchen and told Agent Haney what he saw.  Agent Johnson again asked if they could search the home, and both Defendant and Francine answered in the affirmative.  Defendant stated that he had nothing to hide.  Agent Johnson stayed in the kitchen with the Maeses to gather their personal information while Agent Haney began searching in the master bedroom.

The tone was still pleasant and non-threatening. The Maeses continued to go about their business while the officers were at the home.  They made and had dinner, and Francine offered the agents food and drink.  The Maeses were allowed to move around freely.  The officers did not direct their movements.

Agent Haney first discovered a safe inside the closet.  He returned to the kitchen to ask if someone could open it.  Francince stated that she could and then opened the safe.  A .25 automatic handgun was inside the safe.  When questioned, Defendant denied ownership of the gun but admitted to handling it.  Francine claims ownership of the safe and the gun.

Defendant asked Johnson if the agents had a search warrant.  Johnson stated that they did not and asked Defendant if he wanted them to get one.  Defendant said no.

Shortly after Haney resumed his search, Agent Shawn Grogan responded to the home to

assist in the search. The agents had contacted him on a two-way radio about five to ten minutes after arriving. Grogan was also dressed in plain clothes with his badge around his neck. Haney later found a large quantity of methamphetamine hidden under a nightstand in the master bedroom. Grogan found a package of cigarettes that contained methamphetamine as well.

Agent Johnson asked Defendant about the items they found. Defendant and Francine acted surprised. But Defendant then admitted that they were his. The agents asked if they could search Defendant's person and he showed them a large amount of cash that he had in his pocket.

The agents did not arrest Defendant at that time. The agents were at the home for approximately 30 to 45 minutes. Everyone who testified agreed that voices were never raised and the encounter remained civil and neighborly. The agents talked to Defendant about being an informant. Defendant worked for the task force for a short period of time but did not fulfill his contract requirements.

## CONCLUSIONS OF LAW

The government has the burden of demonstrating that the consent to search was voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497 (1983). Such a determination is factually sensitive and must be based on the totality of the circumstances. *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994). When the government relies upon consent as an exception to the warrant requirement, the relevant inquiry is "whether consent was 'unequivocal and specific and freely and intelligently given,' or whether the police 'coerced the defendant into granting it.'" *United Stated v. Sawyer*, 441 F.3d 890, 898 (10th Cir. 2006). In making this determination, the court should consider the following factors:

>physical mistreatment, use of violence, threats, promises,
>inducements, deception, trickery, or an aggressive tone, the
>physical and mental condition and capacity of the defendant, the
>number of officers on the scene, and the display of police weapons.
>Whether an officer reads a defendant his Miranda rights, obtains
>consent pursuant to a claim of lawful authority, or informs a
>defendant of his or her right to refuse consent.

*Id.* at 895.

The parties agree on the governing law. The main disputes are factual. The court finds the testimony of the agents consistent and credible. Whereas, many of the allegations made by Defendants were inconsistent and illogical. First, with respect to the agents' entry into the home, Agents Johnson and Haney both described the situation similarly. Defendant and Francine, however, gave inconsistent versions of what occurred. The court does not find their versions to be credible. The court finds that the agents identified themselves, asked if they could talk inside the house, and Defendant affirmatively consented and held the door open for agents. The situation was not intimidating or threatening.

The court also finds nothing intimidating or coercive with respect to the request to search the home. All of the witnesses testified that the conversation was neighborly and cordial. The court finds it inconsistent that the tone would have remained friendly if the agents had immediately begun searching the house. In addition, the agents convincingly testified that they discussed the nature of the complaints they had received and asked Defendant questions prior to asking for consent to search. Defendant agreed to the search.

Alhough Defendant later asked if the agents had a search warrant, Johnson honestly responded that they did not and asked him if he wanted the to get one. Defendants question

5

demonstrates that he knew that he could refuse to allow the search. While the agents were in the home, they never restricted Defendant's or his wife's movements. The couple was at ease enough to continue making and eating dinner. The court does not find any type of coercive police conduct that would invalidate Defendant's consent to the search.

The court does not find *any* Miranda violation because Defendant was never in custody for purpose of Miranda. "It is well settled that the safeguards prescribed by Miranda become applicable only when a suspect's freedom of action is curtailed to a degree associated with formal arrest." *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). There was not a prolonged questioning between the agents and Defendant. Defendant and his wife were allowed to move around freely. The conversation was cordial and the search was consensual. Defendant asked about a warrant and when asked if he wanted them to get one, stated that he did not. Defendant could have requested that they leave at that time. The court concludes that a reasonable person would not have believed that their liberty was restricted to the degree associated with formal arrest.

## CONCLUSION

Based on the above findings of fact and conclusions of law, Defendant's Motion to Suppress is DENIED.

DATED this 17th day of December, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge